UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL WETHERBEE,

Plaintiff, Civil Action No. 14-cv-13891

vs. HON. BERNARD A. FRIEDMAN

SARAH K. MAYOR,

Defendant.
_____________________________________/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS OR TRANSFER VENUE**

This matter is presently before the Court on defendant Sarah K. Mayor's motion to dismiss for lack of personal jurisdiction, or in the alternative, transfer venue [docket entry 4]. Plaintiff has filed a response in opposition and defendant has filed a reply. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide this motion on the briefs. For the following reasons, the Court shall deny the motion.

**I. Background**

This is a breach of contract case stemming from the sale of a Rockwell International 114 Commander single engine aircraft ("the Aircraft"). Defendant, seller of the Aircraft, is domiciled in the State of Texas, and plaintiff, potential buyer of the Aircraft, is domiciled in the State of Michigan. On January 13, 2013, defendant contacted Juli Anderson ("Anderson"), defendant's Aircraft sales agent,[1] to discuss placing the Aircraft for sale. Def.'s

[1] On a motion to dismiss for lack of personal jurisdiction, the Court construes the facts in the light most favorable to plaintiff. *See Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (holding that when an evidentiary hearing is not held on a motion to dismiss for lack of personal jurisdiction, the "court will not consider facts proffered by the defendants that conflict with those offered by the plaintiff"). Although defendant argues that Anderson was not her agent, the Court must construe the facts in the light most favorable to

Mot. at Ex. 3, Tab A. Defendant and Anderson continued to communicate intermittently via e-mail about the Aircraft until March 24, 2014, when Anderson informed defendant that plaintiff was a potential buyer. *Id*. at Tab D. Plaintiff became aware of the Aircraft after seeing an advertisement for it online and thereafter responded to the advertisement by contacting Anderson. Pl.'s Reply at 8; Compl. ¶ 7. On May 29, 2014, plaintiff e-mailed defendant for the first time inquiring into the specifics of the Aircraft. Def.'s Mot. at Ex. 3, Tab H. On June 1, 2014, plaintiff flew to Texas to look at the Aircraft, and on June 9, 2014, plaintiff signed an Aircraft Purchase Agreement ("the Agreement"). *Id.* at p. 5; Compl. ¶ 9. This Agreement required plaintiff to deposit $4,000 into escrow and allowed him to conduct a pre-purchase inspection to "assist . . . in making final determination to purchase the Aircraft." Def.'s Mot. at Ex. 3, Tab K. The Agreement also required plaintiff to notify defendant in writing within two days of the pre-purchase inspection if he decided not to purchase the Aircraft. *Id.* Upon written notice of plaintiff's intent not to purchase, defendant was required to refund plaintiff's entire deposit in full. *Id.*

On June 26, 2014, plaintiff flew to Texas, provided defendant with two checks totaling $99,000 (the total balance of the Aircraft purchase price), and conducted a pre-purchase inspection, which revealed corrosion in the engine. Compl. ¶¶ 12-14. As a result of this inspection, plaintiff decided not to purchase the Aircraft and provided Anderson with timely

---

plaintiff. Defendant has made numerous representations to Anderson, and vice versa, that allow the Court to infer an agency relationship at this stage in the matter. *See, e.g.*, Def.'s Mot. at Ex. 3 (Defendant to Anderson: "If you know the plane, and know someone looking, I'm open to offers."; Anderson to defendant: "[O]f course I'm happy to help orchestrate the sale for you."; Anderson to defendant: "Sounds fair on [money], Sarah. . . . Don't need to nail you to a written agreement, as long as you know I am working for you!"; Anderson to Sarah: "Than[ks] again, Sarah[,] for the opportunity to be of service. I promise to do my best for you.").

written notice of his decision. *Id.* ¶ 14. Instead of returning plaintiff's funds as required by the Agreement, defendant negotiated these checks on June 30, 2014. Def.'s Mot. at p. 7.

On October 7, 2014, plaintiff filed a breach of contract action in Wayne Circuit Court to recover the unreturned funds. Defendant timely removed this action to this Court on the basis of diversity jurisdiction. Defendant now moves for this Court to dismiss the action for lack of personal jurisdiction or, in the alternative, transfer the case to the Western District of Texas [docket entry 4].

**II. Limited Personal Jurisdiction Over an Out-of-State Defendant**

A federal court's exercise of personal jurisdiction in a diversity of citizenship case must (1) be authorized by the long-arm statute of the state in which it sits and (2) accord with the Due Process Clause of the Fourteenth Amendment. *See Reynolds v. Int'l Amateur Fed'n*, 23 F.3d 1110, 1115 (6th Cir. 1994). "[W]hen a state's long-arm statute reaches as far as the limits of the Due Process Clause, the two inquires merge and the court 'need only determine whether the assertion of personal jurisdiction . . . violates constitutional due process.'" *See Aristech Chem. Int'l Ltd. v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 627 (6th Cir. 1998) (quoting *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co., Ltd.*, 91 F.3d 790, 793 (6th Cir. 1996)). It is well settled that Michigan's long-arm statute[2] extends the state's jurisdiction to the boundaries permitted by the Due Process Clause. *See Chandler v. Barclays Bank PLC*, 898 F.2d 1148, 1050-51 (6th Cir. 1990). As such, this Court's ability to exercise personal jurisdiction over

---

2 Mich. Comp. Laws § 600.705(1) ("The existence of any of the following relationships between an individual or his agent and the state shall constitute a sufficient basis of jurisdiction to enable a court of record of this state to exercise limited personal jurisdiction over the individual and to enable the court to render personal judgments against the individual or his representative arising out of an act which creates any of the following relationships: (1) The transaction of any business within the state. . . .").

defendant necessarily turns on whether defendant has had "certain minimum contacts with [Michigan] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

The "minimum contacts" requirement is satisfied when defendant "purposefully avail[ed] [her]self of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). The "constitutional touchstone" of purposeful availment is whether "contacts [in the forum] proximately result from actions by the defendant [her]self that create a 'substantial connection' with the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (emphasis in the original) (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)). The defendant's conduct and contacts with the forum must be such that she "should reasonably anticipate being haled into court there," and must be more than a result of mere passive contacts with the forum. *Id.* at 474. A defendant's contact is not merely passive if the defendant purposefully reached out to the forum to establish "continuing relationships and obligations there." *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 151 (6th Cir. 1997) (citing *Burger King*, 471 U.S. at 473). A defendant can also have purposeful contacts with the forum by maintaining a website "if the website is interactive to a degree that reveals specifically intended interaction with residents of the state" and does not simply comprise the "passive posting of information accessible from anywhere in the world." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890 (6th Cir. 2002) (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)).

The Sixth Circuit has created the following three-part test to determine whether exercising limited personal jurisdiction over an out-of-state defendant comports with due process:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co., Inc. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). A defendant can also be "haled into court"[3] based on the actions of her agent. *See Kroger Co. v. Dornbos*, 408 F.2d 813 (6th Cir. 1969). For example, if the defendant is a principal in an agency relationship, courts can look to the *agent's* contacts with the forum and impute those contacts to the defendant for purposes of finding personal jurisdiction over the defendant. *See id.* at 816.[4]

***Application of the Three* Mohasco *Requirements***

Regarding the first *Mohasco* requirement, defendant argues that she did not purposefully avail herself of the benefits of acting in Michigan because she did not enter into an agency relationship with Anderson nor did she authorize Anderson to advertise the Aircraft on

---

[3] *Burger King*, 471 U.S. at 474.

[4] In *Dornbos*, the Sixth Circuit noted:

> We also agree with the District Court upon the basis of the authorities cited in its opinion that Rooks and Adkins, as initial and connecting carriers of the shipment of fish for delivery in Tennessee, stand in the relationship of principal and agent and that Rooks, by virtue of this agency relationship, has sufficient 'minimum contacts' with Tennessee to subject it to in personam jurisdiction pursuant to the long-arm statute consistent with due process.

408 F.2d at 816.

Anderson's website, Suncoast Aviation. Alternatively, defendant argues that even if there were an agency relationship, the Suncoast Aviation website is merely a passive website that does not amount to purposeful availment of doing business in Michigan.

Plaintiff alleges that an agency relationship exists between defendant and Anderson, which the Court must accept as true at this stage in the matter. As such, this alleged agency relationship allows the Court to impute Anderson's contacts with Michigan to defendant. Anderson purposefully reached out to this forum by welcoming and soliciting plaintiff's business. The relationship between Anderson and plaintiff was not merely passive, but one that Anderson actively pursued. For example, in one e-mail from Anderson to defendant, Anderson wrote: "I presented [the Aircraft] to Mike Wetherbee fm Detroit. Hv been working w/him on N31JT and several others n that price range." [sic] Def.'s Mot. Ex. 3, Tab D. In another e-mail, Anderson, who was aware that plaintiff resided in Michigan, admitted that she had been trying to solicit business from plaintiff. Anderson wrote: "[Plaintiff] and I tried buying a 114 project in Kenosha that went wrong being out of annual for over 8 yrs. [H]e's trusted me enough to stay w/me, that's why I suggested to him [at] the $99K instead of $100K." [sic] *Id.* at Tab I. These e-mails indicate that Anderson's contacts with the forum were not merely "random, fortuitous, or attenuated contacts." *Burger King*, 471 U.S. at 475. By her own admission, Anderson's acts were directed at establishing and maintaining a continuing relationship with plaintiff—a Michigan resident whom Anderson knew was interested in purchasing an airplane. Drawing all inferences in the light most favorable to plaintiff, Anderson chose to purposefully and intentionally solicit business from a Michigan plaintiff. Accordingly, Anderson (and thus

defendant under an agency theory) has purposefully availed herself of the privilege of doing business in Michigan.[5]

Next, plaintiff has provided sufficient facts to meet the second *Mohasco* requirement—that "the cause of action must arise from the defendant's activities [in the forum]." 401 F.2d at 381. Plaintiff claims that defendant has breached the Agreement and has wrongfully negotiated his checks, which has caused him economic harm in Michigan. Construing these facts in the light most favorable plaintiff, he has made a prima facie showing that defendant's activities in Michigan (through her agent) have caused him economic injury in Michigan. This causal connection satisfies the "arising from" component in the second *Mohasco* requirement.

Plaintiff has also provided sufficient facts to meet the third *Mohasco* requirement—that "the acts of the defendant or consequences caused by defendant must have substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." 401 F.2d at 381. Anderson has admitted that she had a prior business relationship with plaintiff, whereby she had tried to facilitate plaintiff's purchase of an airplane. Despite the sale falling through, Anderson actively continued a business relationship with plaintiff and wanted to ensure that she could provide plaintiff with a fair deal. *See* Def.'s Mot.

[5] Anderson's website provides an additional reason why defendant (through her agent) has met the first *Mohasco* requirement. The Suncoast Aviation website allows users to click on a link entitled "Aircraft for Sale," which then redirects the user to a companion website (http://www.aso.com/listings/AircraftListings.aspx?dealerid=6404) listing the planes available for sale through Anderson. After selecting a specific plane, the user can then contact the seller/Anderson by filling out a form that facilitates further communication through the website. Pursuant to the website's privacy policy, the website reserves the right to place the user's information—which it receives when the user populates the fields necessary to contact the seller—on a customer list for further solicitation. By redirecting users from Anderson's Suncoast Aviation website to this companion website that may use user information for further airplane solicitation, Anderson's website engages in a level of interactivity that distinguishes it from those which merely passively post information. *See Neogen Corp.*, 282 F.3d at 890.

Ex. 3, Tab I. Anderson's communication with plaintiff, who was located in Michigan, through e-mail is significant because it constitutes the conducting of business there, rather than merely exchanging information. *See, e.g.*, *Sifers v. Horen*, 385 Mich. 195 (1971).

Because Anderson (and thus defendant) knew she was doing business with a Michigan customer, and performed part of her services in Michigan by actively facilitating a business relationship with plaintiff, defendant could reasonably anticipate being "haled into court"[6] in Michigan. Plaintiff has overcome defendant's due process challenge by establishing that the exercise of limited personal jurisdiction over defendant by a court in Michigan does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316.

Finally, defendant argues that her contacts are more prevalent in Texas. Defendant's argument, however, misses the point because the relevant inquiry in determining limited personal jurisdiction turns on whether defendant has *minimum* contacts with the forum, not whether she has more contacts elsewhere. Plaintiff has sufficiently demonstrated that defendant, through her agent, has had sufficient *minimum* contacts with Michigan such that they comport with due process and do not offend "traditional notions of fair play and substantial justice." *Id.* In sum, plaintiff has alleged facts that support a finding that defendant's agent (and therefore defendant) purposefully availed herself of the privilege of doing business in Michigan such that this Court has limited personal jurisdiction over defendant.

**III. Venue**

Defendant next argues that if the Court decides to exercise limited personal jurisdiction over defendant, it should nonetheless transfer the case to the Western District of Texas pursuant to 28 U.S.C. § 1404(a) because it is a more convenient forum. In deciding

[6] *Burger King*, 471 U.S. at 474.

whether to transfer a case to a more convenient forum, a court must consider the following factors:

> (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems associated with trying the case most expeditiously and inexpensively; and (7) the interest of justice.

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253 (1981). "[T]here is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." *Id.* at 265-66.

Turning to the first factor—the convenience of the parties—the Court finds that this factor does not weigh in favor of one party over another. If the case proceeds in Michigan, defendant will be inconvenienced. Conversely, if the case proceeds in Texas, plaintiff will be inconvenienced. The second factor—the convenience of the witnesses—weighs in favor of plaintiff because this is a simple breach of contract case that does not require extensive witness testimony. The third factor—the relative ease of access to sources of proof—again, weighs in favor of plaintiff because the relevant source of proof in a breach of contract case is the contract itself. The fourth, fifth, and sixth factors weigh in favor of plaintiff because witness testimony is likely unnecessary in this breach of contract case. Finally, the interest of justice weighs heavily in favor of plaintiff. Construing all facts in the light most favorable to plaintiff, plaintiff has suffered significant economic harm in Michigan and would continue to suffer economic harm if forced to litigate his claims in Texas.

For these reasons, the Court denies defendant's motion to transfer this case to the Western District of Texas. The Court finds that after considering and weighing all of the factors, the motion will be denied.

**IV. Conclusion**

For the reasons discussed above,

IT IS ORDERED that defendant's motion to dismiss for lack of personal jurisdiction or to transfer venue is denied.

s/Bernard A. Friedman
BERNARD A. FRIEDMAN
SENIOR UNITED STATES DISTRICT JUDGE

Dated: January 12, 2015
Detroit, Michigan